## CIRCUIT COURT OF THE CITY OF CLIFTON FORGE

Main Street Baptist Church
of Clifton Forge

v.

Harry L. McCall

December 1, 1978

By JUDGE ROSCOE B. STEPHENSON, JR.

Main Street Baptist Church of Clifton Forge, in its organization and government, is a church entirely independent of any other church or general society. This being the case, a majority of the voting members of the church in a duly called and constituted meeting has the power and authority to decide any issue in the church, including, of course, whether the pastor is to be terminated. In this church, the pastor serves at the will and pleasure of that majority.

Therefore, the dispositive issue in this case is whether the meeting of the congregation held on May 22, 1978, purporting to terminate Mr. McCall as pastor, was valid.

In the present case, I find by a preponderance of the evidence, the following facts. On May 1, 1978, a joint meeting of the Deacon Board and the Trustee Board (with only the deacons voting) proposed that the congregation meet for the purpose of voting out the pastor. Thereafter, the time, place and purpose of the meeting was announced to the congregation at three consecutive worship services, and, in accordance with these announcements, the congregation assembled for such meeting on May 22, 1978. At its beginning, the pastor, Mr. McCall, presided. After disposing of certain routine business, the matter of terminating the pastor came before the body as new business. After some discussion following a report on

the aforesaid action previously taken by the Deacons and Trustees, a motion was made and seconded that the church adopt that recommendation and that Mr. McCall's position as pastor of the church be terminated. At this juncture, the pastor and a number of members left the meeting. The reason given by the pastor for leaving was that he should not preside and that some disinterested and impartial person should preside in his place. Mr. P. M. Heighter, chairman of the Deacon Board, thereafter presided over the meeting in the place and stead of the pastor. The motion to terminate the pastoral relationship passed by a vote of 41 in favor of the motion and two opposed. A second motion, adopted by a vote of 41 to 1, declared that the pulpit would be vacant after 90 days and that the pastor would receive a two-weeks vacation. A third motion, adopted by a vote of 41 to 1, authorized the official boards (i.e. the deacons and trustees) to work out the termination details with Mr. McCall.

At a regular quarterly meeting of the congregation held on July 24, 1978, the minutes of the meeting of May 22, 1978, were read and approved with one correction, that being, that "before leaving the building in the previous meeting he (Mr. McCall) declared the meeting illegal out of order without an unbiased person moderating the meeting."

By letter dated August 26, 1978, Mr. McCall advised that he considered the action taken on May 22, 1978, to be illegal and that he would not leave the church, but would continue to act as its pastor. This suit ensued.

Mr. McCall contends that notice of the May 22nd meeting was invalid. The church constitution provides that "[a] specially called business meeting may be held to consider special matters of significance. One week notice must be given for the specially called meeting . . . Notice of all specially called business meetings of the church shall be given by announcement one week prior to the meeting, unless extreme urgency renders such notice impracticable."

As previously stated, a preponderance of the evidence shows that the time (May 22, 1978) and purpose (to vote out Mr. McCall as pastor) of the meeting was announced before the church congregation at the regular morning worship services conducted on May 7, May 14 and May 21, 1978.

I am of opinion that the contention that the notice had to be given by the church clerk in order to be valid is without merit.

I hold, therefore, that notice of the May 22nd meeting was valid.

Mr. McCall further contends that the May 22nd meeting was invalid because (1) it was not moderated by an impartial and unbiased person, (2) the meeting was converted into a regular business meeting, (3) he was not apprised in writing of the reasons for termination, (4) the matter could not be voted upon at that meeting, and (5) some of the members did not have the right to vote.

Regarding the issue of moderator of the meeting, the Church Constitution provides: "The moderator shall be the pastor. In the absence of the pastor, the chairman of the Board of Deacons shall preside; in the absence of both, the Clerk of the church shall call the meeting to order, and an acting moderator shall be elected by the body."

When Mr. McCall elected to leave the meeting, the chairman of the Board of Deacons was thereby authorized to preside. This is exactly what happened. Moreover, there was no claim made by anyone that Mr. Heighter was acting improperly as the moderator of the meeting.

I do not think that either the oral testimony or the minutes of the meeting indicate any abandonment by the members present to pursue the matter which was the primary purpose of the meeting, and a mere determination that the May 22nd meeting was designated a "regular business meeting" did not preclude action on the question of whether the pastor should be terminated.

I hold that Mr. McCall did not have to be apprised in writing of the reason for the proposed termination. The reasons had been stated to him at the joint deacon-trustee meeting of May 1st. According to the constitution, the pastoral relationship may be terminated by the church "whenever the body becomes dissatisfied with his services."

I also reject the contention that a vote on the matter could not be taken at the May 22nd meeting. Nothing in the constitution suggests that the matter must be heard and discussed at one meeting and a vote thereon taken at a subsequent meeting.

The defendant sought to show that fourteen persons who voted for his termination were not qualified to vote because they had not paid "at least half of their dues,

within a six month period." The evidence on this point dealt with the payment of dues for the period beginning January 1, 1978, and ending April 30, 1978, (a mere four months), and therefore there is no merit to this contention.

Mr. McCall also contends that this is not a proper suit for an injunction. As previously stated, the church, acting through its authorized members at a valid meeting, voted to terminate the pastoral relationship. After being notified of this action, Mr. McCall expressly stated that he would not honor this action and would continue to act as pastor. The undisputed evidence revealed that church attendance and financial support by its members were greatly reduced as a result of dissatisfaction with the pastor. Clearly the complainant had no adequate remedy at law and the continuance of a church pastor who had been dismissed would cause irreparable injury to the church.

I have again considered the defendant's motion to quash and motion to dissolve temporary injunction, and for the reasons previously stated, I will not disturb the previous ruling thereon.

In conclusion, I hold that the action of the church in terminating Mr. McCall as its pastor was valid and in accordance with the Church Constitution, and that, under all the facts and circumstances presented, the complainant is entitled to a permanent injunction as prayed for in the Bill of Complaint.

One further word would seem to be in order. In no way should this decision be construed as a reflection on the moral character of Mr. McCall. Indeed, there has not been the slightest suggestion that Mr. McCall has done anything which would impugn his character or integrity. It is obvious to me that the dissatisfaction which led to his dismissal resulted from the fact that Mr. McCall had spread himself too thin by trying to be the pastor of a church and a full-time graduate student at the same time.